# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

SIMON YEDID, individually and on behalf of all other
persons similarly situated,

Index No.: _____/2019

**SUMMONS**

Plaintiff,

Plaintiff designates Kings
County as the Place for Trial

-against-

BROOKLYN NETS, LLC,

Pursuant to CPLR 503, the
basis of venue is Plaintiff and
Defendant's residence

Defendant.

-------------------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANT:**

      **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the State of
New York, Kings County, located at 360 Adams Street, in the County of Kings, City of New
York and State of New York, within the time provided by law as noted below and to file your
answer to the attached Complaint with the Clerk; upon your failure to answer, judgment will be
taken against you for the relief demanded in the Complaint, together with the costs and
disbursements of this action.

Dated:   New York, New York
        October 28, 2019

    /s/
    Darren Oved, Esq.
    Andrew J. Urgenson, Esq.
    James Reilly, Esq.
    OVED & OVED LLP
    *Attorneys for Plaintiff*
    401 Greenwich Street
    New York, New York 10013
    Tel: 212.226.2376

NOTE: The law provides that: (a) if this summons is served by its delivery to you personally
within the State of New York, you must appear and answer within TWENTY
days after such service; or (b) if this summons is served by delivery to any person other than you
personally, or is served outside the State of New York, or by publication, or by any other means
other than personal delivery to you within the State of New York, you are allowed THIRTY days
after proof of service is filed with the Clerk of the Court within which to appear and answer.

DEFENDANT'S ADDRESS:

Brooklyn Nets, LLC
168 39th Street
Brooklyn, New York 11232

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X
SIMON YEDID, individually and on behalf of all          INDEX NO.:
other persons similarly situated,

                                    *Plaintiff*,

          - against -                                   **CLASS ACTION
                                                        COMPLAINT**
BROOKLYN NETS, LLC,

                                    *Defendant.*
-----------------------------------------------------------------X

     Named Plaintiff Simon Yedid ("Named Plaintiff"), by his attorneys, Oved & Oved LLP,

complaining of Defendant Brooklyn Nets, LLC (the "Brooklyn Nets" or "Defendant"), alleges

upon knowledge as to himself, and upon information and belief as to all other matters, as

follows:

## SUMMARY OF CLAIMS

     1.    Named Plaintiff is a former Brooklyn Nets season ticket holder.  On or about

April 10, 2019, Defendant terminated Named Plaintiff's Brooklyn Nets season ticket

membership ("Membership"), purportedly due to his resale of his tickets to certain games.

     2.    Defendant's termination of Named Plaintiff's Membership is a part of a pattern

and practice that Defendant, along with its affiliate BSE Global ("BSE"), has engaged in, in

violation of New York law, to systematically terminate the Memberships of individual Brooklyn

Nets season ticket holders, such as Named Plaintiff, who exercise their right to re-sell their

season tickets.

     3.    Defendant is engaging in this unlawful and predatory practice in an attempt to

destroy the ability of season ticket holders to re-sell Brooklyn Nets tickets, including through

licensed ticket brokers.  Defendant's goal is to eliminate competition in the market for Brooklyn

Nets tickets, and to instead funnel all resales of Brooklyn Nets tickets though its preferred ticket

broker and profit-sharing partner, Dynasty Sports & Entertainment ("Dynasty"). Dynasty's co-founder and former President was for many years a Vice President of BSE prior to founding Dynasty, and is currently a Senior Vice President of BSE.

4.      Defendant essentially seeks to create a monopoly over the resale of Brooklyn Nets tickets, which serves to raise the prices that ticket purchasers pay for Brooklyn Nets tickets.

5.      To accomplish this goal, Defendant not only relies on its improper termination of Memberships, but also the chilling effect that such terminations have on other Brooklyn Nets season tickets holders who may also seek to exercise their right to re-sell their tickets, resulting from the fear that Defendant will improperly terminate their Memberships as well.

6.      Defendant's actions are in direct violation of the New York Arts and Cultural Affairs Law (the "ACAL"), which (i) created a free market for the resale of tickets to sporting and arts events; (ii) prohibited venues from revoking individuals' season tickets based solely on those individuals' resale of those tickets; and (iii) protected the right of resale at any price and through any legal medium.

7.      Defendant's unlawful conduct has resulted in severe damage to Named Plaintiff and the class, as well as to the ticket-buying public at large. In addition to monetary damages, Named Plaintiff seeks equitable relief enjoining Defendant from unlawfully terminating the Memberships of Brooklyn Nets season ticket holders so as to prevent them from exercising their rights under New York law to re-sell their tickets.

## THE PARTIES

8.      Named Plaintiff is a natural person residing at 1896 East 4th Street, Brooklyn, New York. Named Plaintiff had held a Brooklyn Nets season ticket Membership since 2012, until that Membership was terminated by Defendant on or about April 10, 2019. Since 2012,

*Page 2 of 19*

Named Plaintiff has spent a total of more than $225,000 on season ticket Memberships with the Brooklyn Nets.

9.     The Brooklyn Nets, which operates a professional basketball organization that competes in the National Basketball Association ("NBA"), is a New Jersey limited liability company located at 168 39th Street, Brooklyn, New York, and is authorized to do business in the State of New York.  BSE, an affiliate of the Brooklyn Nets, is located at 168 39th Street, Brooklyn, New York, and is authorized to do business in the State of New York.  BSE owns and/or controls the Brooklyn Nets, as well as the venue in which the Brooklyn Nets play home basketball games—known as the Barclays Center.

## CLASS ALLEGATIONS

10.     This action is properly maintainable as a Class Action under Article 9 of the CPLR.

11.     This action is brought on behalf of Named Plaintiff and a class consisting of similarly situated individuals whose Memberships Defendant has unlawfully terminated because those individuals exercised their rights under the ACAL to re-sell their tickets to certain Brooklyn Nets games.

12.     The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of 40 individuals.  In addition, the names of all potential members of the putative class are not known.

13.     The questions of law and fact common to the putative class predominate over any questions affecting only individual members.  These common questions of law and fact include, but are not limited to:

(i)     Whether Defendant violated the ACAL by terminating season ticket holders' Memberships for exercising their rights to re-sell their own tickets to certain Brooklyn Nets games, including to licensed ticket brokers;

*Page 3 of 19*

(ii)   Whether Defendant has unlawfully acted to prevent individual season ticket holders from exercising their rights under the ACAL to re-sell their tickets to certain Brooklyn Nets games, including to licensed ticket brokers; and

(iii)   Whether Defendant has unlawfully restrained competition in the market for resale of Brooklyn Nets tickets by actively working to prohibit the resale of Brooklyn Nets tickets other than through Defendant's preferred ticket broker and profit-sharing partner, Dynasty.

14.     Named Plaintiff's claims are typical of the claims of the putative class.  Named Plaintiff and the putative class members are all victims of the Defendant's common unlawful policy and/or plan to: (1) violate the ACAL by terminating season ticket holders' Memberships for exercising their rights to re-sell their tickets to certain Brooklyn Nets games, including to licensed ticket brokers; (2) prevent individual season ticket holders from exercising their rights under the ACAL to re-sell their tickets to certain Brooklyn Nets games, including to licensed ticket brokers; and (3) eliminate competition in the market for resale of Brooklyn Nets tickets by actively working to prohibit the resale of Brooklyn Nets tickets other than through Defendant's preferred ticket broker and profit-sharing partner, Dynasty.

15.     Named Plaintiff and his counsel will fairly and adequately protect the interests of the putative class.

16.     Named Plaintiff has retained counsel experienced in class action litigation.

17.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Named Plaintiff and the putative class members lack the financial resources to adequately prosecute separate lawsuits against Defendant.

18.     A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's unlawful actions.

## JURISDICTION / VENUE

19.     This Court has personal jurisdiction over Defendant pursuant to CPLR 301 because Defendant resides within the State of New York.

20.     Venue is proper in Kings County pursuant to CPLR 503(a) because Named Plaintiff and Defendant reside within Kings County.

## FACTUAL ALLEGATIONS

**A.     The ACAL Expressly Protects Season Ticket Holders'
Right to Re-Sell Their Tickets to Brokers and Others**

21.     In 2007, the New York State legislature amended the ACAL in order to, *inter alia*, protect the rights of season ticket holders who chose to re-sell their tickets.     The memorandum in support of the amendment to the ACAL stated:

> Recently professional sports teams in New York have placed restrictions on the methods by which their season ticket holders may resell tickets.  The venues have used the threat of revocation or in some cases have actually revoked season tickets when fans sold one or more tickets through a medium not authorized by the venues.  ***This legislation would prohibit the venues from revoking season tickets or the contractually agreed upon right of first refusal to purchase future tickets when such revocation is based solely on the basis of resale . . . .  It is the intention of this legislation to accommodate the resale of all types of tickets, including*** single performance, ***subscription and season tickets in a free and open marketplace.  Therefore, this legislation protects the right of resale at any price and through any legal medium.***

New York State Assembly Memorandum in Support of Legislation, Bill No. A7526A (emphasis added).

22.     In keeping with the intent of the ACAL to protect the rights of ticket re-sellers, ACAL § 25.30(1)(a) provides that

> it shall be prohibited for any operator of a place of entertainment, or operator's agent, to [r]estrict by any means the resale of any tickets included in a subscription or season ticket package as a condition to purchase, as a condition to retain such tickets for the duration of the subscription or season ticket package agreement, or as a condition to retain any contractually agreed upon rights to purchase future subscription or season ticket packages . . . .

*Page 5 of 19*

23.     The ACAL also contains a provision requiring certain entities engaged in the business of re-selling tickets to obtain a license from the State of New York.  However, ACAL § 25.03(8) expressly exempts from that requirement, *inter alia*, "any person, firm or corporation which purchases any tickets solely for their own use or the use of their invitees, employees and agents."

24.     While operators such as the Brooklyn Nets retain certain ticket revocation rights, New York law prohibits them from exercising those rights arbitrarily or capriciously.

**B.     Defendant's Unlawful Termination of Named Plaintiff's Season Ticket Membership**

25.     Named Plaintiff has been a Brooklyn Nets season ticket holder since 2012.  As the Brooklyn Nets only offer 1-year and 2-year Memberships at any given time, Named Plaintiff must periodically renew his Membership.

26.     On or about January 29, 2019, Named Plaintiff received an email from the Brooklyn Nets, which email contained the subject line "2019-20 Memberships Available Now." That email invited Named Plaintiff to renew his Membership for the upcoming basketball season.  The email encouraged Named Plaintiff to "GET LOCKED IN – LOCK IN YOUR PRICE," and offered "UP TO A $1,000 SIGNING BONUS."

27.     The same day, Named Plaintiff sent an email to a Brooklyn Nets employee responsible for ticketing and requested the employee to call him immediately because Named Plaintiff would "like to know more and make a decision on renewing my tickets right away."

28.     On or about January 30, 2019, Named Plaintiff returned to the Brooklyn Nets via email a signed a two-year agreement to renew his Membership, which agreement would cover the 2019-2020 and 2020-2021 basketball seasons.

29.     On or about February 4, 2019, the Brooklyn Nets confirmed that they had received Named Plaintiff's signed renewal agreement.

*Page 6 of 19*

30.     Approximately two weeks later, on February 19, 2019, a BSE employee sent an

email to Named Plaintiff stating as follows:

> Dear Simon,
>
> This email is in pertaining to your Brooklyn Nets season ticket membership for
> the 2018-2019 season.  It has recently come to our attention that you have sold
> tickets in violation of New York law by reselling your Brooklyn Nets season
> tickets without a New York Ticket Reseller License.
>
> Section 25.13 of the [ACAL] provides that anyone engaged in the business of
> reselling a significant amount of tickets to a place of entertainment must first
> obtain a license from the Secretary of State.  ACAL provides that a violation of
> this Section is unlawful and punishable by fines.
>
> Pursuant to your season ticket agreement with Brooklyn Nets, LLC ("BKLYN"),
> you are required to "comply with all applicable laws and all rules and regulations
> of all governmental authorities." Therefore, BKLYN hereby requests that you
> mail or email a copy of your New York Ticket Reseller License in effect during
> the 2018-19 season to the following address within five (5) business days:
>
> Brooklyn Nets, LLC
> 168 39th Street, 7th Floor
> Brooklyn, NY 11232
> Attn:  John Baier
> JBaier@bseglobal.net
>
> Should you fail to send a copy of your New York Secretary of State-issued Ticket
> Reseller License within this time frame, BKLYN reserves the right to terminate
> your season ticket agreement, effective upon the conclusion of the Brooklyn Nets
> 2018-19 regular season, and seek any relief to which it is entitled, whether at law
> or in equity, without prejudice to any other rights and remedies that BKLYN may
> have for your failure to provide your license.

31.     Named Plaintiff had, during the 2018-2019 basketball season, re-sold the tickets

associated with his Membership to certain games.  However, Named Plaintiff's right to re-sell

those tickets is expressly protected under the ACAL.  Moreover, pursuant to ACAL § 25.03(8),

Named Plaintiff was not and is not required to obtain a ticket re-seller license from the State of

New York, because he purchased his Membership for his own use or the use of his invitees,

employees and agents.

*Page 7 of 19*

32.    Accordingly, the next day, February 20, 2019, Named Plaintiff responded to the email he had received from the BSE employee as follows:

Hi John,

I am replying in reference to your above email.

I am an owner of a wholesale company of children's merchandise in NYC. The primary use for these tickets is for personal use as I am a huge Nets fan. I also use these to entertain customers/clients. However, there are games that I or clients cannot attend. Those unused tickets are given to a professional ticket broker, who is fully licensed, to sell. Since the entity selling these tickets is fully licensed, there is/was no violation of Section 25.13 of ACAL.

I hope I was able to give some context as to why you may see some tickets have been sold. Please confirm this matter is cleared. I am a big fan of the Nets I have lived here my whole li[f]e and just signed an extension so. I am fully committed to the team.

Please note my timely reply within your five (5) business day timeframe. If you have any further inquiries please feel free to reach out.

33.    The BSE employee thereafter requested that Named Plaintiff provide the license number of the ticket broker who re-sold on Named Plaintiff's behalf the Brooklyn Nets tickets that Named Plaintiff was unable to use.  Named Plaintiff provided the requested license number information on February 25, 2019.

34.    Less than thirty minutes later, the BSE employee responded to Named Plaintiff via email, stating as follows:

Thank you for your response. In reviewing your New York Ticket Reseller License, we have found that it is linked to multiple accounts. [ACAL] Section 25.13 specifically that [sic] a license may not be assigned or transferred.

You are in violation of our policy. Therefore, we are exercising our right to terminate your season ticket agreements, effective upon the conclusion of the Brooklyn Nets 2018-19 regular season, and seek any relief to which we are entitled, whether at law or in equity, without prejudice to any other rights and remedies that we may have for your violation of the Brooklyn Nets' policy.

35.    However, the purported reason for termination set forth in BSE's email to the Named Plaintiff is a thinly veiled and meritless pretext for Defendant's violation of ACAL.

*Page 8 of 19*

36.     Indeed, Named Plaintiff was expressly entitled under ACAL to resell his tickets without his own ticket license, and the ticket license of the broker who later resold Named Plaintiff tickets is irrelevant because Named Plaintiff did not use that license to sell his tickets.

37.     Thereafter, Named Plaintiff informed the Brooklyn Nets that their revocation of his season tickets was unlawful, but the Brooklyn Nets failed to respond.

**C.     Defendant Unlawfully Terminates Other
Individuals' Season Ticket Memberships in the Same Manner**

38.     Defendant has engaged in, and continues to engage in, a similar pattern and practice of unlawfully terminating other individuals' Memberships as well, in order to prevent those individuals from exercising their right to re-sell certain of their season tickets.

39.     Defendant's pattern and practice with respect to other individuals includes the same or similar manufactured, pretextual purported reasons for unlawfully terminating Named Plaintiff's Membership.

40.     These abrasive attacks on Brooklyn Nets season ticket holders are designed not only to unlawfully terminate Memberships, but also to send the chilling message to other season tickets holders or potential season ticket holders that they risk the unlawful termination of their Memberships in the event they seek to exercise their protected ticket resale rights.

41.     Regardless of Defendant's pretexts, its unlawful terminations violate the ACAL, which expressly protects individuals' rights to re-sell their tickets, including to ticket brokers who, by the nature of their business, also sell other tickets to Brooklyn Nets games.

**D.     Defendant Is Violating the ACAL to Stifle Competition in the
Market for Brooklyn Nets Tickets at the Expense of Consumers**

42.     Defendant's motivation in seeking to prevent season ticket holders from exercising their rights to re-sell their Brooklyn Nets tickets is to stifle competition and

*Page 9 of 19*

monopolize the market for Brooklyn Nets tickets so that Defendant can exploit its close insider relationship and profit-sharing partnership with Dynasty.

43.     Dynasty is a ticket broker and self-described "[i]ndustry leader in yield management and distribution solutions to meet all your ticketing needs." Dynasty's co-founder and former president was a vice president of Defendant's affiliate BSE for several years prior to joining Dynasty. After a four-plus year tenure at Dynasty, that individual left Dynasty and has since re-joined BSE as a Senior Vice President.

44.     Since as early as 2015, Defendant has been diverting to Dynasty **thousands** of Brooklyn Nets tickets for resale, in apparent contradiction of Defendant's own policy of limiting every other season ticket holder to four tickets each.

45.     Specifically, Defendant has entered into long-term deals that allow Dynasty to re-sell ***more than four thousand Brooklyn Nets tickets per game (over 25% of the entire capacity of the Barclays Center), and maybe many more***. Moreover, because Defendant has rights to share in Dynasty's profits from selling Brooklyn Nets tickets, Defendant's objective is to maximize Dynasty's ticket inventory and prices.

46.     Defendant has thus unlawfully restricted the ability of season ticket holders to re-sell their own Brooklyn Nets tickets, while at the same time granting to Dynasty the ability to re-sell more than a quarter of all Brooklyn Nets tickets available for any given game.

47.     In undertaking the above-described conduct, Defendant is trying to destroy the ability of season ticket holders and brokers to participate in the lawful sale of Brooklyn Nets tickets, and instead to allow Defendant and Dynasty to collude to monopolize the market for Brooklyn Nets tickets so that Defendant can reap as much profit as possible, at the expense of consumers and competition in the market.

*Page 10 of 19*

48.     As the United States Government Accountability Office has stated, the resale market for event ticketing is generally considered to be more competitive than the primary market because of the large numbers of brokers participating in the secondary market. Necessarily, if the large numbers of brokers are reduced by anti-competitive conduct to a few or even one broker, competition in the resale market for tickets is severely curtailed.

49.     As the American Antitrust Institute has found, relationships between primary ticket sellers such as Defendant, and secondary ticket sellers such as Dynasty, can reduce inventory for other ticket re-sellers and in turn, can result in higher fees, as the primary ticket seller essentially has a monopoly over both markets.

50.     Defendant's unlawful pattern and practice, as described above, prevents season ticket holders from participating in the market for resale of Brooklyn Nets tickets, and has the effect of eliminating competition in the market for Brooklyn Nets tickets.

51.     Defendant's severe restraint on competition has the effect of tending to increase prices in the resale market for single-game Brooklyn Nets tickets, because it eliminates Dynasty's competition in that market and gives Dynasty power to dictate prices to individual consumers.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

52.     Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

53.     As set forth herein, a bona fide justiciable and substantial controversy exists concerning whether Defendant's course of conduct violates ACAL § 25.30.

54.     The parties herein have adverse legal interests as to both present and prospective obligations.

55.     A declaratory judgment would serve the useful purpose of clarifying and settling the legal issues.

56.     A declaratory judgment would finalize the controversy and offer relief from uncertainty.

57.     Accordingly, Named Plaintiff is entitled to a judgment declaring that Defendant's course of conduct violates ACAL § 25.30.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Injunctive Relief)

58.     Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

59.     It is essential that injunctive relief be granted: (i) enjoining and restraining Defendant from unlawfully terminating individuals' Memberships in violation of the ACAL; and (ii) compelling Defendant to reinstate those Memberships that it has unlawfully terminated.

60.     Defendant's conduct has caused and continues to cause irreparable harm to Named Plaintiff and the putative class because Brooklyn Nets season tickets are unique, limited, and cannot be replaced.

61.     Absent injunctive relief, Defendant is likely to continue to violate the ACAL by terminating individuals' Memberships to prevent those individuals from exercising their right pursuant to the ACAL to re-sell their tickets.

62.     The granting of injunctive relief imposes no hardship on Defendant because it merely requires Defendant to comply with the statutory protections of the ACAL.

63.     Named Plaintiff and the putative class are further entitled to injunctive relief pursuant to ACAL § 25.33, which confers a private right of action for, *inter alia*, injunctive relief for violations thereof.

64.     Named Plaintiff and the putative class have no adequate remedy at law with respect to Defendant's continued violation of the ACAL.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of New York Arts & Cultural Affairs Law § 25.30(1)(A))

65.     Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

66.     Defendant's pattern and practice of terminating individuals' Memberships in order to prevent them from exercising their rights to re-sell certain of their tickets violates the letter and spirit of the ACAL as set forth more fully above.

67.     Defendant's pattern and practice is an attempt to empower Defendant with the discretion to terminate and/or not renew any Membership on the basis that the individual associated with the Membership is a re-seller and/or uses the services of a re-seller, which is precisely what the ACAL prohibits.

68.     Rather than comply with the protections afforded re-sellers pursuant to the ACAL, Defendant is instead attempting to prevent any re-sale of Brooklyn Nets tickets other than by Dynasty.

69.     To accomplish its goal, Defendant seeks to eliminate other ticket re-sellers from the marketplace altogether.

70.     By doing so, Defendant is gutting the protections of the ACAL and is impeding the "free and open marketplace" for ticket re-selling that the New York State Legislature intended to protect and foster by the passage of the ACAL.

71.     Accordingly, Named Plaintiff and the class are entitled to injunctive relief and monetary damages pursuant to ACAL § 25.33.

*Page 13 of 19*

72.     Named Plaintiff and the class are also entitled to recover reasonable attorneys' fees pursuant to ACAL § 25.33.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Antitrust – Sherman Act § 1 – Unlawful Restraint of Trade)

73.     Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

74.     Defendant has unreasonably restrained trade through a series of coordinated agreements and acts to limit competition in the market for the resale of Brooklyn Nets tickets.

75.     Defendant's agreements and acts, which show a conscious commitment to a common scheme, include: (i) Defendant's actions to terminate or threaten to terminate the Memberships of season ticket holders who exercise their rights to re-sell their tickets, including to licensed ticket brokers "linked to multiple accounts;" and (ii) Defendant's sale of ***thousands of Brooklyn Nets tickets per game*** to Dynasty, with the knowledge and intent that those tickets would be re-sold by Dynasty.

76.     Defendant's coordinated agreements and acts are being undertaken with the common design to exclude and eliminate competition in the market for Brooklyn Nets tickets, and for the purpose of controlling the supply and prices thereof in all markets, including the resale market.

77.     As a result of Defendant's coordinated agreements and acts, along with Dynasty, competition in the market for Brooklyn Nets tickets has been diminished and/or eliminated, which has had the effect of raising prices for Brooklyn Nets tickets.

78.     There are no legitimate business justifications or efficiencies for Defendant's coordinated agreements and acts that would counterbalance their demonstrated anticompetitive effects.

*Page 14 of 19*

79.     Defendant's acts constitute violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, *per se*, under a "quick look" standard, and under the rule of reason.

80.     Named Plaintiff and the class have been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, and which amount is subject to trebling pursuant to 15 U.S.C. § 15(a).

**AS AND FOR AN FIFTH CAUSE OF ACTION**
**(Antitrust – Sherman Act § 2 – Conspiracy to Monopolize)**

81.     Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

82.     Defendant's conduct in foreclosing competition in the market for Brooklyn Nets tickets constitutes a conspiracy to monopolize that market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

83.     To foreclose competition in the market for Brooklyn Nets tickets, Defendant has engaged in efforts to (i) ensure that Dynasty has monopolistic power over the resale of Brooklyn Nets tickets; and (ii) preclude competitor ticket brokers from competing with Dynasty by, *inter alia*, preventing Brooklyn Nets season ticket holders from exercising their right to re-sell their tickets to licensed ticket brokers.  Defendant has willfully, knowingly, and with specific intent to do so, conspired to monopolize the markets for Brooklyn Nets tickets, including the resale market.

84.     If Defendant's exclusionary conduct is allowed to continue, there is a dangerous likelihood that it, along with Dynasty, will monopolize the markets for Brooklyn Nets tickets, including the resale market.

85.     There are no legitimate efficiency benefits that counterbalance the demonstrated anticompetitive effects of these overt acts, including their foreclosure of competition in the market for Brooklyn Nets tickets.

86.     As a result of Defendant's violation of Section 2 of the Sherman Act, Named Plaintiff and the class have been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, which is subject to trebling pursuant to 15 U.S.C. § 15(a).

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Antitrust – Sherman Act § 2 – Attempted Monopolization)

87.     Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

88.     Defendant's conduct in foreclosing competition in the market for Brooklyn Nets tickets constitutes an attempt to monopolize that market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

89.     To foreclose competition in the market for Brooklyn Nets tickets, Defendant has engaged in efforts to (i) ensure that Dynasty has monopolistic power over the resale of Brooklyn Nets tickets; and (ii) preclude competitor ticket brokers from competing with Dynasty by, *inter alia*, preventing Brooklyn Nets season ticket holders from exercising their right to re-sell their tickets to licensed ticket brokers.  Defendant has willfully, knowingly, and with specific intent to do so, conspired to monopolize the market for Brooklyn Nets tickets.

90.     If Defendant's exclusionary conduct is allowed to continue, there is a dangerous likelihood that it, along with Dynasty, will monopolize the markets for Brooklyn Nets tickets, including the resale market.

91.    There are no legitimate efficiency benefits that counterbalance the demonstrated anticompetitive effects of these overt acts, including their foreclosure of competition in the markets for Brooklyn Nets tickets, including the resale market.

92.    As a result of Defendant's violation of Section 2 of the Sherman Act, Named Plaintiff and the class been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, which is subject to trebling pursuant to 15 U.S.C. § 15(a).

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Antitrust – Donnelly Act)

93.    Named Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

94.    Defendant's coordinated efforts to foreclose competition in the markets for Brooklyn Nets tickets, including the resale market, constitute a violation of the Donnelly Act, New York General Business Law § 340.

95.    Defendant's agreements and acts, which show a conscious commitment to a common scheme, include: (i) Defendant's actions to terminate or threaten to terminate the Memberships of season ticket holders who exercise their rights to re-sell their tickets, including to licensed ticket brokers "linked to multiple accounts;" and (ii) Defendant's sale of *thousands of Brooklyn Nets tickets per game* to Dynasty, with the knowledge and intent that those tickets be re-sold in the market for Brooklyn Nets tickets.

96.    Defendant's coordinated agreements and acts, along with Dynasty, are being undertaken with the common design to exclude and eliminate competition in the markets for Brooklyn Nets tickets, including the resale market, and for the purpose of controlling the supply and prices thereof.

97. As a result of Defendant's coordinated agreements and acts, competition in the market for Brooklyn Nets tickets has been diminished and/or eliminated, which has had the effect of raising prices for Brooklyn Nets tickets.

98. There are no legitimate efficiency benefits that counterbalance the demonstrated anticompetitive effects of these overt acts, including their foreclosure of competition in the markets for Brooklyn Nets tickets, including the resale market.

99. As a result of Defendant's violation of the Donnelly Act, Named Plaintiff and the class been harmed by Defendant's anticompetitive conduct in an amount to be determined at trial, which is subject to trebling pursuant to New York General Business Law § 340(5).

**WHEREFORE**, Named Plaintiff respectfully demands relief as follows:

a. On the First Cause of Action, a declaratory judgment that Defendant, in terminating season ticket holders' Memberships so as to prevent them from exercising their resale rights under the ACAL, is in violation of the ACAL.

b. On the Second Cause of Action, an order: (i) enjoining and restraining Defendant from unlawfully terminating individuals' Memberships in an effort to prevent those individuals exercising their resale rights under the ACAL; and (ii) compelling Defendant to reinstate those Memberships that it has unlawfully terminated.

c. On the Third Cause of Action for violation of the ACAL, a money judgment against Defendant in an amount to be determined at trial, as well as Named Plaintiff's attorney's fees pursuant to ACAL § 25.33.

d. On the Fourth Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

e. On the Fifth Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

f. On the Sixth Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

g. On the Seventh Cause of Action, a money judgment against Defendant in an amount to be determined at trial, which amount is subject to trebling.

h. An award of Named Plaintiff's reasonable attorneys' fees, costs, and expenses incurred in connection with this action and any other post-Judgment collection efforts, to the extent not already awarded; and

i. Such other, further, and different relief as the Court deems just and proper.

Dated: New York, New York
      October 28, 2019

Darren Oved, Esq.
Andrew J. Urgenson, Esq.
James Reilly, Esq.
OVED & OVED LLP
*Attorneys for Plaintiff*
401 Greenwich Street
New York, NY 10013
Tel: 212.226.2376